UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

**SCHOOL BOARD OF JACKSON
COUNTY, FLORIDA**

     Plaintiff,

v.

                                       Case No.:

**P.L.B., and ROSEMARY PALMER,**

     Respondent(s),

_____/

## COMPLAINT

Plaintiff, the School Board of Jackson County, Florida, brings this action against Defendants, P.L.B. and Rosemary Palmer, seeking attorneys' fees pursuant to 20 U.S.C. § 1415(i)(3)(B). In support of this Complaint, Plaintiff alleges the following:

### NATURE OF THE CASE

1.     This suit arises out of a series of proceedings between the named parties under the Individuals with Disabilities Education Act (IDEA) before the Florida Division of Administrative Hearings (DOAH). Plaintiff is seeking attorneys' fees and costs to cover those expenses incurred in defending a frivolous and unfounded petition brought by the Defendants, in which Plaintiff prevailed.

### JURISDICTION & VENUE

2.     Plaintiff's claims arise under the laws of the United States and thus this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and has authority to grant relief pursuant to 20 U.S.C. § 1415(i)(3)(B).

3.     Venue is proper in the Northern District of Florida pursuant to 28 U.S.C. § 1391 because the events upon which this Complaint is based took place in this district.

PARTIES

4.     Plaintiff School Board of Jackson County ("SBJC") is a local educational agency which operates and manages the public schools within Jackson County, Florida.

5.     Defendant P.L.B. is the parent of a student ("Student") enrolled in a Jackson County public school.   P.L.B. and Student initiated proceedings before DOAH alleging violations by the School Board of the Individuals with Disabilities Education Act (IDEA).

6.     Defendant Rosemary Palmer is the attorney for Plaintiff P.L.B. and Student, and has been the attorney of record in each proceeding involving the School Board, P.L.B. and Student.

FACTUAL ALLEGATIONS

7.     P.L.B., individually and on behalf of Student, filed a Due Process Petition on November 24, 2010 (the "first petition") against the SBJC alleging that it had denied Student a free and appropriate public education and had thus violated the IDEA.   The 35-page, 70-count petition resulted in protracted litigation, involving six weeks of hearings before an Administrative Law Judge.   The hearings have concluded, the parties have submitted their proposed final orders, and they are awaiting a final order from the Administrative Law Judge.

8.     Subsequent to the filing of the first Petition in November 2010, by P.L.B., the SBJC made at least two attempts to meet with P.L.B. to discuss the Student's educational placement and adoption of another IEP.   Neither attempt resulted in the agreement of P.L.B. and the SBJC to any change in the student's educational placement/IEP and thus the June 7, 2010 IEP which had been challenged by Plaintiff P.L.B. in the first due process proceeding remained in effect and "stayed put."

9.     Immediately following the conclusion of the final hearing for the first petition (in

April 2012), however, Plaintiff P.L.B., through her attorney, Rosemary Palmer, filed a second due process petition claiming that the SBJC:

      a. Violated IDEA by denying a free and appropriate public education ("FAPE") to P.L.B.'s son ("Student") because SBJC had not updated Student's individual Education Plan ("IEP") since June 6, 2011;

      b. Retaliated against Student by failing to update his IEP during the period from June 6, 2011 until present;

      c. Retaliated against student by denying him FAPE during this time period;

      d. Retaliated against Student and P.L.B. by refusing to allow P.L.B. to record the IEP meetings with the school board.

10. Among other things, P.L.B. and her attorney, Rosemary Palmer, argued that the SBJC violated the statutory requirement to annually review a student's educational placement when it failed to update Student's IEP on or before June 2011 (one year after the challenged IEP of June 7, 2010 became effective). A copy of the second petition is attached hereto and incorporated herein by reference as **Exhibit "A".**

11. Plaintiff prevailed on this claim before the Administrative Law Judge and the second petition was dismissed.

## LEGAL FRAMEWORK

12. P.L.B.'s initiation of the first due process proceeding in November 2010 invoked a provision of the IDEA which dictates that during the pendency of any proceeding conducted pursuant to the Act, unless the state or local educational agency and the parents otherwise agree, a student with a disability remains in his or her then-current educational placement.

13. This means that if there is disagreement between the district and the parents

regarding a student's placement, the law requires that a student remain in his or her current educational placement during any legal review. This is referred to as the "stay-put" provision, and operates to maintain the status quo of the student's educational placement during the pendency of any litigation about that placement.

14.     20 U.S.C. § 1415(j), provides that:

> During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, *the child shall remain in the then-current educational placement of the child*, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed. (emphasis added)

15.     The Supreme Court of the United States addressed this provision in *Honig v Doe*, holding that it is "unequivocal" and plain that a school board shall not change the current educational placement unless or until it can agree on an alternative placement with the parents, or until the issue is resolved through the administrative hearing process. 484 U.S. 305, 323 (1998).

16.     The Second Circuit held that the provision amounts to, "in effect, an automatic preliminary injunction." *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982).

17.     This "injunction" maintains the status quo and ensures that the schools cannot exclude a disabled student or change his placement without complying with due process requirements. *CP v. Leon County Sch. Bd.*, 483 F.3d 1151, 1156 (11th Cir. 2007).

18.     The Eleventh Circuit described the issue in *CP* as follows:

> In this case, CP argues that the School Board was obligated to implement an alternative placement, abandoning the stay-put IEP [individual education plan], in spite of the fact that the stay-put provision had been invoked and that the parties had not agreed on an interim alternative placement. The thrust of CP's argument is that the School Board violated the IDEA's requirement that local educational agencies update a child's IEP annually in order to provide FAPE, even though the stay-put provision had been invoked and even though the School Board and parents could not agree on an alternative placement.

*Id.* at 1157 (internal citations omitted). In holding that the School Board had satisfied all of its obligations under DOAH, the court pointed out that "the School Board *could not* change the placement provided in the stay-put IEP because [the student] had invoked the stay-put provision and the parties could not agree on an interim alternative placement." *Id.* (emphasis added).

19. Particularly of note is the fact that Rosemary Palmer was both the parent and the attorney in the *CP* case, so Rosemary Palmer is abundantly familiar with the Eleventh Circuit's holding regarding IEPs and the stay-put provision. In fact, two of the arguments Rosemary Palmer made in the *CP* case are the same arguments she presented, and failed to prevail on, in the second petition in this case:

> The thrust of CP's argument is that the School Board *violated the IDEA's requirement that local educational agencies update a child's IEP annually in order to provide FAPE*, even though the stay-put provision had been invoked and even though the School Board and parents could not agree on an alternative placement.
>
> CP's argument is that the School Board *violated the IDEA's requirement that local educational agencies update a child's IEP annually in order to provide FAPE, even though the stay-put provision had been invoked and even though the School Board and parents could not agree on an alternative placement.* We hold that School Board complied with all of its obligations under the IDEA.

*CP v. Leon County Sch. Bd.*, 483 F.3d 1151 (11th Cir. 2007)

## CLAIM FOR RELIEF

20. Although Rule 6A-6.03311(9)(x)(1),[1] Florida Administrative Code, contains an

---

1. This rule provides that:

attorneys' fees provision with respect to IDEA, DOAH is without jurisdiction to award attorneys' fees under this Rule and thus the Plaintiff must seek relief in this Court.

21.     The claims made in the second petition are not supported by the material facts necessary to establish the claims set forth therein; nor are the claims supported by the application of law to those material facts.

22.     20 U.S.C. § 1415(i)(3)(B) provides that:

> In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs – . . .
>
> (II) to a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation; or
>
> (III) to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

23.     Plaintiff was the prevailing party in the Second Petition brought against Plaintiff by Defendants in the Division of Administrative Hearings. A copy of the Final Order from the Administrative Law Judge is attached hereto and incorporated herein as **Exhibit "B".**

24.     Controlling case law has clearly established that a school cannot violate the IDEA by failing to update an IEP once the stay-put provision is invoked as a result of the filing of a

---

In any due process hearing or subsequent judicial proceeding brought under this rule, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to:

. . .

(b) To a prevailing party who is the Department of Education or school district against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation; or

(c) To the prevailing Department of Education or school district against the attorney of a parent, or against the parent, if the parent's request for a due process hearing or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

petition for due process. Furthermore, the SBJC even met with both P.L.B. and her attorney, Rosemary Palmer, multiple times in an effort to develop mutually acceptable updates to the IEP, but to no avail.

25.     Plaintiff P.L.B. and her attorney, Rosemary Palmer, filed the first petition in November 2010, knowing full well that the IEP in effect at that time would remain in effect until a new IEP was agreed to, or the initial due process proceeding was concluded. During the six-week hearing, constituting more than thirty volumes of transcript, the issue of the IEP of June 7, 2010 remaining in effect and "stay put" was well known.

26.     Furthermore, Rosemary Palmer, as the attorney in both the *CP* case and the instant case, is thoroughly familiar with the relevant statutes and case law providing that invocation of the stay-put provision for the existing IEP cannot serve as the basis for a subsequent claim that the "freezing" of the challenged IEP denied FAPE and violated the IDEA. This issue of the stay put provision was well-briefed by Rosemary Palmer, and the Eleventh Circuit in *CP* was clear in its instruction as to the injunctive nature of the stay-put provision.

27.     As such, the Second Petition brought by P.L.B. and Rosemary Palmer was frivolous, unreasonable, and without foundation, and its filing was intended to harass, to cause unnecessary delay, and to needlessly increase the cost of litigation.

28.     As to Defendant Rosemary Palmer, as the attorney for P.L.B., she drafted the Second Petition, argued its merits to the Administrative Law Judge, drafted and filed supporting proposed orders and nine separate motions, and continued to litigate after the litigation clearly became frivolous, unreasonable, and without foundation.

WHEREFORE, Plaintiff School Board of Jackson County respectfully requests that this Court enter an order awarding to Plaintiff the fees and costs incurred in responding to

Defendants' frivolous Second Petition and awarding such further relief as is just and proper.

**BOB L. HARRIS, ESQ.**
FL Bar No.: 460109
**S. DENAY BROWN, ESQ.**
FL Bar No.: 88571
Messer, Caparello & Self, P.A.
P.O. Box 15579
Tallahassee, Florida 32317
Phone: (850)222-0720
Facsimile: (850)558-0662
*Counsel for School Board of Jackson County*

## STATE OF FLORIDA
## DIVISION OF ADMINISTRATIVE HEARINGS

A.L. by his parent PLB,
PLB individually,
    Petitioner

Case No. 12-001273E

V.

School Board of Jackson County, Florida
    Respondent

### AMENDED VERIFIED REQUEST FOR IMPARTIAL DUE PROCESS HEARING

Comes now, Petitioners A.L, ("STUDENT"), by and through his parent, PLB; and PLB for herself ("MOTHER"), and file this request for due process under the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. 1400 et seq. ("IDEA").

Because IDEA requires exhaustion "before seeking relief that is also available [under IDEA]" (20 U.S.C. 1415(l))", Petitioner also raised claims under The Rehabilitation Act of 1973, 20 U.S.C. 790 et. seq. ("Section 504"), and the Americans with Disabilities Act, 42 U.S.C. 12101, ("ADA").

Petitioners explicitly do NOT invoke stay put under IDEA in this case, except as to the accommodations and Assistive Technology that are identified in the June 7, 2010 IEP (which Petitioners do NOT concede SBJC has provided in the past nor since June 7, 2011), and placement of STUDENT in regular education classes, without an aide being assigned to him.

### ISSUES

1. Whether SBJC violated the IDEA procedurally and/or substantively; and denied STUDENT FAPE by not having a valid and current Individual Education Program ("IEP") from June 6, 2011 to present.

2. Whether SBJC retaliated against one or more Petitioners for engaging in protected activities by refusing or failing to develop an IEP for student from and after June 6, 2011 to the present.

3. Whether SBJC discriminated against STUDENT by denying him FAPE under 504 from 6/7/2011 to the present.

4. Whether SBJC retaliated against one or more Petitioners by refusing to hold an IEP meeting because MOTHER wished to record the meeting.

Page 1 / 6



## PARTIES AND JURISDICTION

5.  A.L (herein "STUDENT") is a sixteen year old tenth grader at Marianna High School who has resided in Jackson County, FL at 4471 Pilcher Rd. Marianna, and attended School Board of Jackson County schools (herein "JCS") at all times relevant in this matter.

6.  SBJC has identified STUDENT as a child with a disability under IDEA in the categories OHI, TBI, Occupational Therapy, Physical Therapy, and Language Impairment, at all times relevant to this complaint.

7.  STUDENT is, and has been at all times relevant to this complaint, an otherwise qualified person with a disability under SECTION 504 and ADA, with substantial impairments in multiple major life activities.

8.  Respondent SBJC is a "local educational agency" ("LEA") under IDEA, and is therefore responsible for providing STUDENT free appropriate public education ("FAPE")

9.  Respondent SBJC is a recipient of federal funds under IDEA and other federal grant programs and is responsible for providing free appropriate public education under SECTION 504.

10. Respondent SBJC is a covered entity under ADA.

11. The Division of Administrative Hearings (herein "DOAH") is given jurisdiction under Section 1003.57, Florida Statutes to hear complaints under IDEA.

12. Without exhaustion of SECTION 504 and ADA claims under IDEA, Petitioner cannot bring such claims in any other forum, pursuant to caselaw in this jurisdiction.

13. Respondent SBJC must provide impartial hearings under SECTION 504, and may contract with DOAH to do so.

## FACTS

14. SBJC developed an IEP for STUDENT on or about June 7, 2010, which IEP states that the services duration was through June 2, 2011.

15. SBJC met to change the annual IEP developed in June 2010 for STUDENT, on November 17, 2010.

Page 2 / 6

16.   STUDENT filed for due process to challenge the changes SBJC put into the November 17, 2010, and to challenge the manner in which it was developed.   That case is the subject of DOAH Case 10-10485E which has been heard, and is pending transcripts and final order.

17.   Petitioner explicitly did not invoke stay put on any issue other than not moving AL to learning strategies class and not assigning him an aide.   The following is STUDENT's original due process request made November 24, 2010:

"We do not agree that the 11-17-2010 IEP provides FAPE for [AL], and we do not want him to be required to take an ESE Learning Strategies Class in place of his regular curriculum, or the result that he not be allowed to have Rec, or have an aide, as as [sic] the school has threatened to do effective 11-29-2010. We are filing not to preserve anything in the latest IEP (which doesn't provide FAPE either) other than his placement in regular classes without an aide, but TO preserve [AL]'s placement in regular classes, without an aide...."

18.   Because MOTHER filed due process request under IDEA, SBJC refused and failed to develop IEP for STUDENT on or after June 6, 2011, continuing to date.

19.   STUDENT has been harmed and denied free appropriate public education under IDEA by SBJC's failure to develop and have in place any IEP since June 7, 2011.

20.   SBJC was aware that MOTHER filed a due process request under IDEA in November 2010.

21.   SBJC retaliated against STUDENT and MOTHER for engaging in protected activities by refusing or failing to develop and have in place a current IEP from and after June 6, 2011 to present, which will continue until it develops an IEP, in violation of IDEA, SECTION 504 and/or ADA.

22.   SBJC staff member Charlene Wiggins emailed MOTHER on March 22, 2011, in response to MOTHER's March 21, 2011 request that STUDENT be given the course schedule he asked for.  Ms. Wiggin's email says, "Thank you for sending this to me. I did get the original from [STUDENT] in class on Monday. As with all ESE students, next year's classes will be discussed at the end of the year IEP meeting, then finalized when we have received FCAT scores.  I look forward to seeing you there."

23.   SBJC began the process of setting up the annual IEP meeting in May 2011 but then on May 12, 2011 refused to have the meeting, claiming stay put.

24.   SBJC held a meeting concerning Extended School Year ("ESY") 2011 on June 9, 2011,

Page 3 / 6

25. SBJC refused to agree to provide STUDENT tutoring services during summer of 2011 that they had provided the previous summer under what they had just claimed (see paragraph 22) was a stay put IEP, including locating the services at Marianna High School.

26. On June 15, 2011 MOTHER wrote to SBJC staff Shawn Larkin: "Your attorney represented to the ALJ that you were imminently planning IEP meeting for next year, as part of your argument for continuance. We have already pointed out that last year you ran out of time to get things set up. And we intend to do ESY for the entire summer. We do not agree to any delay in holding the IEP for next year. We have suggested dates, and if you are refusing them, then offer your own and as soon as possible. As for present levels of performance, we do have the FCAT data and last year's SAT 10 showing a decline over the years, even though [STUDENT]'s IQ measurement has increased. You can do another SAT 10 --- they are now computerized and cost $15 each (though you do have to arrange for a package of 40 tests, but you surely have that many SWD who need that comprehensive information.) That should be proof enough that what you've been doing hasn't delivered FAPE, and we need to provide the requested tutoring before and after school."

27. On August 8, 2011, without any consultation as to dates, SBJC sent MOTHER notice of an IEP meeting August 15, 2011.

28. The meeting was changed to Friday, August 19, 2011 to accommodate MOTHER's previously schedule appointments.

29. MOTHER wrote to SBJC staff in the August 17, 2011 email: "... I will be recording the IEP meeting. Please ask people to attend who are willing to be recorded. We will waive any of the required people if you cannot find ones in the required categories who are willing to be recorded. When I arrive, I will be recording everyone who is there and will continue until the meeting is over and I have left the school. (In the past I have given in and continued the meeting without recording. You all saw what happened during the meeting that did NOT make it into the meeting notes. It protects us all to have a complete and accurate record of our interaction with each other.[sic]..."

30. SBJC sent a school resource officer to the front of the Marianna High School office where MOTHER had appeared on August 19, 2011 for the IEP meeting, to tell her she could not go back to the meeting because she was recording it.

31. On August 22, 2011, MOTHER wrote, "... Ms. Carla Elliott walked up to the front office before the officer and went to the back to tell the officer I was there, when she could have just told me to come with her. I just can't understand why you don't want an accurate record of my child's IEP meeting when we are the only ones with any right to privacy in IEP meetings. I hope you will change your mind so we can hold the IEP meeting for

Page 4 / 6

[STUDENT] or at least agree to waive the IEP meeting to include the things I listed in my previous correspondence. In the meantime, we still are requesting the changes we asked for in my previous correspondence, which I have cut and pasted below. Failure to provide those services and accommodations will deny [STUDENT] FAPE and as we have previously told you we will be sending JCSB the bill for private services. Failure to amend to include the new testing accommodation of doing it in an individual room using a computer will further harm [STUDENT] by meaning he can't use that accommodation for FCAT and the PSAT or PLAN which the district administers, and which it is clear he needs for testing situations. We would like to have a successful year in which [STUDENT] actually learns because he receives the sped, related services and accommodations in the LRE to which he is entitled. Let's get it done by waiving the meeting if you refuse to meet so we can record it..."

32. On August 22, 2011, SBJC staff Shawn Larkin wrote, "As we've said, we are happy to meet and consider your requests without recording devices."

33. SBJC has not provided STUDENT regular or special education and related aids and services that (i) are designed to meet individual educational needs of STUDENT as adequately as the needs of nonhandicapped [sic] persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of 34 CFR §§ 104.34, 104.35, and 104.36 from June 7, 2011 to present.

## REMEDIES

34. Petitioner asks the court to grant the following remedies:

   a. Order SBJC to convene an properly constituted IEP meeting and develop an IEP that provides STUDENT free appropriate public education for summer 2012 and school year 2012-2013.

   b. Order SBJC to provide STUDENT with 900 hours compensatory education of parents' choice for denial of FAPE school year 2011-2012 including transportation and living expenses if parents choose services that are not local.

   c. Order SBJC to provide STUDENT with 250 hours compensatory education of parents' choice for denial of FAPE for summer 2011 including transportation and living expenses if parents choose services that are not local.

   d. Order SBJC to provide STUDENT with compensatory education with 250 of parents choice, including transportation and living expenses if parents choose services that are not local.

   e. Order SBJC to cease and desist all retaliation.

Page 5 / 6

f.   Order SBJC to pay damages that are determined just.

g.   Order SBJC to pay Petitioner's legal fees and costs in this matter.

h.   Order such other remedies as the court determines just.

The above factual allegations are true and correct to the best of my knowledge and belief.

Executed this 17th day of April 2012.

By MOTHER

## CERTIFICATE OF SERVICE

The original has been filed with Division of Administrative Hearing electronically on April 16, 2012 , copy the same date to Frank E. Bondurant, Bondurant and Fuqua, P.A., 4450 Lafette Street, PO Box 1508, Marianna FL 32447, by email to fbondurant@embarqmail.com

**Rosemary N. Palmer**

Rosemary N. Palmer
Attorney for Petitioner s
FBN 070004
5260 Pimlico Drive
Tallahassee FL 32309
floridalawlady@gmail.com
850 668 9203

STATE OF FLORIDA
DIVISION OF ADMINISTRATIVE HEARINGS

```
A. L.,                         )
                               )
      Petitioner,              )
                               )
vs.                            )     Case No. 12-1273E
                               )
JACKSON COUNTY SCHOOL BOARD,   )
                               )
      Respondent.              )
                               )
```

## FINAL ORDER OF DISMISSAL

On April 26, 2012, Respondent, Jackson County School Board
(JCSB), filed a Motion to Dismiss Amended Verified Request for
Impartial Due Process Hearing.  After several extensions,
Petitioner, on May 24, 2012, filed a response.  On May 29, 2012,
Respondent requested a hearing on its Motion to Dismiss.
Thereafter, Petitioner objected to scheduling such a hearing.
After review of the pleadings, and record in this matter,
Respondent's Motion for Hearing on its Motion to Dismiss was
denied since the record on the issue of stay-put is complete and
needs no further evidence.

## APPEARANCES

      For Petitioner:  Rosemary N. Palmer, Esquire
                       5260 Pimlico Drive
                       Tallahassee, Florida  32309



For Respondent:   Frank Bondurant, Esquire
                  Jackson County School Board
                  4450 Lafayette Street
                  Marianna, Florida  32447

                  Bob Harris, Esquire
                  Messer, Caparello and Self, P.A.
                  2618 Centennial Place
                  Tallahassee, Florida  32308

### STATEMENT OF THE ISSUE

The issue in this proceeding is whether the stay-put
provisions of 20 U.S.C. § 1415(j) are in effect regarding
Petitioner's IEP.

### FINDINGS AND CONCLUSIONS OF LAW

On April 6, 2012, Respondent JCSB received a Verified
Request for Impartial Due Process Hearing from the attorney for
Petitioner.  The request was forwarded to the Division of
Administrative Hearings (DOAH).  Later on April 16, 2012,
Petitioner filed an Amended Verified Request for Impartial Due
Process Hearing.  Petitioner's request for due process is wholly
based on the JCSB's failure to hold an IEP meeting.  After a pre-
hearing conference with all of the parties, a Notice of Hearing,
scheduling the due process hearing for June 18, 2012, in
Marianna, Florida, was entered.

As indicated, Respondent filed a motion to dismiss
Petitioner's due process hearing request.  The motion was based
on the fact that Petitioner has a pending due process case before

2

the Division of Administrative Hearings and that the automatic
stay provisions (stay-put) regarding Petitioner's Individualized
Education Plan (IEP) provided in 20 U.S.C. section 1415(j) are in
effect.   Indeed, in this case, there is no dispute that the
parties to this action attempted to schedule an IEP meeting and
failed, albeit the reason for that failure is in dispute.

However, such reason is immaterial to the issue of stay-put
and whether an administrative remedy can be utilized to impose
injunctive relief to lift the automatic stay imposed by section
1415(j).

Section 1415(j) provides as follows:

> . . . during the pendency of any proceedings
> conducted pursuant to this section, unless
> the State or local educational agency and the
> parents otherwise agree, the child shall
> remain in the then-current educational
> placement of such child, or, if applying for
> initial admission to a public school, shall,
> with the consent of the parents, be placed in
> the public school program until all such
> proceedings have been completed.

Under this section, school districts may have the obligation
to attempt to review and propose revisions to a child's IEP
during the course of litigation.[1/]   However, they do not have the
authority to make unilateral changes to such placement.   See
Honig v. Doe, 484 U.S. 305, 323 (1988) and Town of Burlington v.
Dept. of Educ. for the Cmmw. of Mass., 736 F.2d 773, 797 (1st
Cir. 1984) (Burlington II).

3

Burlington II involved an IEP that was found to not provide
FAPE by a state administrative judge and private school funding
was ordered. The school district then appealed the decision to
federal district court. The district court, after an evidentiary
hearing, found the contested IEP provided a free appropriate
education (FAPE) and ordered reimbursement to the district for
the money it had expended for the private school. Importantly,
for purposes of this case, the district court took additional
evidence regarding the appropriate educational placement of the
subject student for the years which had passed during the
litigation of the case, but for which IEPs had not been prepared
and had not been the subject of review at the state
administrative level.

By the time Burlington II occurred, all of the parties
agreed that the original contested IEP did not provide FAPE, but
disagreed over which school, public or private, could provide
FAPE. After an in-depth review of the IDEA, the First Circuit
Court of Appeals reversed the decision of the district court and
remanded to the district court for an evidentiary hearing,
including an evidentiary hearing on the issues developed during
the intervening years. On the issue of placement for years after
the contested IEP for which no IEPs had been completed and no
state administrative review had occurred, the First Circuit,
while noting that the IDEA, in its opinion, did not address the

4

issue of whether IEPs are to be revised during the pendency of federal review and ignoring the practical effects of the mandatory stay-put requirements of the IDEA, developed a judicial rule that IDEA required schools to continue to develop IEPs while litigation was pending, with such IEPs perhaps being reviewed at the state administrative level.  The court felt that such a policy would, among other purposes, assist in promoting settlements.  Id.  The First Circuit viewed the mandatory annual review of the IEP as an ongoing obligation of a school even while litigation is pending.  The Court reiterated this principle when it stated that school districts cannot avoid their IDEA duties by not reviewing a child's IEP during "stay-put," as holding otherwise would reward school districts for "misfeasance or nonfeasance in providing appropriate education services" during a "stay-put" placement.  Indeed, the Burlington II court viewed the mandatory language of subsection 1415(j) more as a guideline when the issue was reimbursement for a unilateral change in placement prior to the end of litigation.  See Maine Sch. Admin. Dist. No. 35 v. Mr. and Mrs. R., 321 F.3d 9, 19 (1st Cir. 2003); MM ex rel. DM v. Sch. Dist. of Greenville County, 303 F.3d 523, 536 (4th Cir. 2002); Amann v. Stow Sch. Sys., 982 F.2d 644, 651 (1st Cir. 1992); Anderson v. Dist. Of Columbia, 877 F.2d 1018, 1023 (D.C. Cir. 1989).  Significantly, however, even without such state administrative review, the First Circuit also recognized and

approved the authority of the district court to hear and take
evidence on these later years under its power to grant
appropriate relief incident to its determination of the contested
IEP for the initial year. Id. at 396. Of importance is the fact
that the hearing being discussed in Burlington II and Anderson
was an evidentiary hearing before a district court with
injunctive powers. Of greater significance is that the
Burlington II court did not address whether administrative
tribunals have the authority to issue injunctive relief and force
the development of an IEP or alter the IEP without IEP team
input.

As noted, the language of section 1415(j) is automatic and
prevents any change to Petitioner's earlier placement. In Wagner
v. Board of Education of Montgomery County, 335 F.3d 297 (4th
Cir. 2003), the Fourth Circuit ruled that the district court
erred when it ordered the school board to offer an alternative
placement when the stay-put placement became unavailable without
utilizing traditional preliminary injunction criteria.

The Fourth Circuit found that section 1415(j) was
prohibitive in nature and did not impose any affirmative
obligations on the school board to seek an alternative placement.
Thus, since the Division does not have injunctive authority, the
only remedies for a stay-put IEP, which no longer meets the
educational needs of the child, is for the parties to either

6

agree to a change in placement or for one party to seek a preliminary injunction. Wagner, supra.

The issue was similarly addressed in Kuszewski v. Chippewa Valley Schools, 131 F. Supp. 2d 926 (E.D. Mich. 2001). The federal district court held that because of the mandatory stay-put provisions of the IDEA, a school was under no obligation to amend or review an IEP that was the subject of such litigation because when stay-put is in effect, the school district is powerless to alter a child's IEP without the explicit agreement of the parents. See also C. P. v. Leon Cnty. Sch. Bd. , 483 F.3d 1151, 1155-56 (11th Cir. 2007); Digre v. Roseville Sch. Independent Dist. No. 623, 841 F.2d 245 (8th Cir. 1988); and Johnson v. Special Educ. Hearing Office, 287 F.3d 1176 (9th Cir. 2002); See also M.P. v. Leon Cnty. Sch. Bd., DOAH Case No. 04-0517E (DOAH Mar. 30, 2004) and K.G. v. Santa Rosa Cnty. Sch. Bd., DOAH Case No. 04-1588E (DOAH Aug. 31, 2004).

As stated earlier, the parties' attempts to hold an IEP meeting have failed. The decision in the earlier case has not yet been rendered and the stay-put provisions of section 1415(j) are in effect. Additionally, the issues raised in this case are wholly based on the failure of the parties to meet in an IEP meeting and develop a new IEP for A.L.[2/] However, this administrative tribunal has no authority to dissolve the stay-put injunction and require the development of a new IEP. Only the

7

civil courts have such power and authority and the parents remedy lies there. Therefore, because of the automatic stay, this action should be dismissed.

### ORDER

Having fully considered the arguments of counsel, it is ORDERED:

That this action is dismissed and the file of the Division of Administrative Hearings is hereby CLOSED.

DONE AND ORDERED this 15th day of June, 2012, in Tallahassee, Leon County, Florida.

Diane Cleavinger

DIANE CLEAVINGER
Administrative Law Judge
Division of Administrative Hearings
The DeSoto Building
1230 Apalachee Parkway
Tallahassee, Florida  32399-3060
(850) 488-9675
Fax Filing (850) 921-6847
www.doah.state.fl.us

Filed with the Clerk of the
Division of Administrative Hearings
this 15th day of June, 2012.

### ENDNOTES

1/  It also should be noted that changes in IEPs that do not involve placement are not subject to the stay-put provisions of IDEA.  However, such nuanced services are not involved here.

8

[2/]   The Petitioner did raise an issue of FAPE based on JCSB's
refusal to permit the parent to record all meetings with JCSB
regarding Petitioner.   The parent has, in part, based continued
refusal to participate in an IEP meeting on this inability to
record such a meeting due to some of the staff's refusal to grant
permission to record them during meetings with the parent.
However, the issue of recordation is based on the application of
chapter 934, Florida Statutes, and specifically section 934.03
which makes it a crime to intercept certain oral communications
without the permission of all the participants to that
communication.   Resolution of this issue would involve injunctive
relief and can only be addressed by the civil courts.   IDEA
simply cannot address issues involving the application of
criminal statutes and an individual's right to privacy as
determined by the Florida Legislature in the educational arena.


COPIES FURNISHED:

Lindsey Granger, Program Director
Bureau of Exceptional Education
  and Student Services
Department of Education
325 West Gaines Street, Suite 614
Tallahassee, Florida  32399-0400

Rosemary N. Palmer, Esquire
5260 Pimlico Drive
Tallahassee, Florida  32309

Frank Bondurant, Esquire
Jackson County School Board
4450 Lafayette Street
Marianna, Florida  32447

Bob Harris, Esquire
Messer, Caparello and Self, P.A.
2618 Centennial Place
Tallahassee, Florida  32308

Charles M. Deal, General Counsel
Department of Education
Turlington Building, Suite 1244
325 West Gaines Street
Tallahassee, Florida  32399

Lee W. Miller, Superintendent
Jackson County School Board
2903 West Jefferson Street
Marianna, Florida  32446

### NOTICE OF RIGHT TO SEEK JUDICIAL RELIEF

This decision is final unless, within 90 days after the date
of this decision, an adversely affected party:

> a)  brings a civil action in the appropriate
> state circuit court pursuant to Section
> 1003.57(1)(b), Florida Statutes (2009), and
> Florida Administrative Code Rule 6A-
> 6.03311(9)(w); or

> b)  brings a civil action in the appropriate
> district court of the United States pursuant
> to 20 U.S.C. § 1415(i)(2), and Florida
> Administrative Code Rule 6A-6.03311(9)(w).

10