IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


JACKSON COUNTY SCHOOL BOARD,

    Plaintiff,

v.                                                CASE NO. 5:12cv294-RH/EMT

PLB and ROSEMARY PALMER,

    Defendants.

_____/

## ORDER ON THE MERITS

This is the next chapter in a long-running dispute between a school board and a student with disabilities. The issue this time is the school board's ability to recover attorney's fees for successfully defending an administrative proceeding brought on behalf of the student. The governing standard is set out in the Individuals with Disabilities Education Act ("IDEA"): the school board may recover its fees if the administrative proceeding was pursued on grounds that were "frivolous, unreasonable, or without foundation" or was pursued for "any improper purpose." 20 U.S.C. § 1415(i)(3)(B). Here the school board's fee claim falls short.

I

The IDEA requires a school board to provide a free appropriate public education that affords at least some educational benefit for a student with a disability. *See Bd. of Educ. v. Rowley*, 458 U.S. 176, 200 (1982). The statute creates a comprehensive procedural system for meeting that goal. Part of the system is development of an individualized education program ("IEP") for each student with a disability. The student's parents have a right to attend a meeting at which the IEP is developed. When a student, ordinarily acting through one or both parents, disagrees with an IEP, the student may obtain administrative review. In Florida, this ordinarily means an evidentiary hearing before an administrative law judge ("ALJ") in the state's Division of Administrative Hearings ("DOAH").

This case involves a student with disabilities identified in this order as "A.L." The Jackson County School Board provided services to A.L., but disagreements arose as early as A.L.'s seventh-grade year. In November 2010, when A.L. was in the ninth grade, the School Board convened an IEP meeting that his mother, identified in this order as "PLB," did not attend. PLB, represented by attorney Rosemary Palmer, petitioned for administrative review. This order refers to the resulting administrative proceeding as DOAH 1. And the order describes this (and all later administrative and judicial proceedings discussed in this order) as brought by PLB, without distinguishing between those brought by PLB

individually, by PLB on behalf of A.L., or by A.L. through PLB; for present purposes, these distinctions make no difference.

An ALJ conducted a six-week evidentiary hearing in DOAH 1 that ended on April 5, 2012. On the next day, April 6, PLB, again represented by Ms. Palmer, served a new administrative petition, initially challenging the School Board's failure to convene another IEP meeting after November 2010 and eventually challenging the School Board's refusal to allow PLB to record a new IEP meeting. This order refers to this proceeding as DOAH 2. The proceeding was assigned to the same ALJ who was handling DOAH 1.

On June 15, 2012, the ALJ dismissed DOAH 2 for lack of jurisdiction, ruling that under the IDEA's "stay-put" provision, the School Board was required to keep the prior IEP in place until the ongoing challenge to the November 2010 IEP was finally resolved. *See* 20 U.S.C. § 1415(j) (providing that "during the pendency of any proceedings conducted pursuant to [the IDEA], unless the State or local agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child . . . until all such proceedings have been completed"). As authorized by the IDEA, PLB filed an action in this court challenging the ALJ's decision in DOAH 2. The court (through District Judge Richard Smoak) dismissed the case and assessed fees against PLB. PLB appealed

the dismissal, and the Eleventh Circuit affirmed. PLB separately appealed the fee award. That appeal is still pending.

On December 27, 2012, the ALJ issued an order resolving DOAH 1 in the School Board's favor. PLB again filed an action in this court challenging the decision. This court (again through Judge Smoak) ruled for the School Board. PLB appealed. The appeal is still pending.

The School Board asserts it is entitled to recover from PLB and Ms. Palmer the attorney's fees the Board incurred in defending DOAH 2. The School Board initially sought to recover the fees through a new DOAH proceeding, referred to in this order as DOAH 3. The ALJ ruled for the School Board and awarded fees, but the award was reversed on an appeal within the state court system, because the IDEA provides that any such fee award must be made in an original proceeding in federal district court. *See* 20 U.S.C. § 1415(i)(3)(B); *Zipperer ex rel. Zipperer v. Sch. Bd. of Seminole Cty., Fla.,* 111 F.3d 847, 851 (11th Cir. 1997). So the School Board filed this action, naming PLB and Ms. Palmer as defendants.

The School Board moved for summary judgment. I entered an order under Federal Rule of Civil Procedure 56(f)(3) giving notice that summary judgment might be entered for *or against* the School Board. The case is ripe for a summary-judgment ruling resolving the case on the merits.

II

The IDEA allows an award of attorney's fees in favor of a school board against a parent or attorney who files or continues to pursue a claim against the school board that is "frivolous, unreasonable, or without foundation" or that is "presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." 20 U.S.C. § 1415(i)(3)(B)(i). The first part of this standard traces its roots to *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978). And the first part of the standard, if not also the second, is stringent. *See, e.g.*, *Johnson v. Florida*, 348 F.3d 1334, 1354 (11th Cir. 2003) (citing *Walker v. NationsBank of Fla.,* 53 F.3d 1548, 1558 (11th Cir. 1995)); *see also Christiansburg*, 434 U.S. at 422 ("Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.").

The controlling question here is whether the School Board has met this standard. The answer is no.

The *factual* basis for the DOAH 2 petition was not only colorable but correct. The School Board cancelled an IEP meeting in May 2011, citing the stay-put provision. The School Board relented and scheduled new IEP meetings for June and August 2011, but the School Board refused to go forward when PLB insisted on recording the meetings. PLB plainly had a reasonable basis for her

factual assertions in DOAH 2 that the School Board first refused to conduct a new IEP meeting at all and then refused to allow PLB to record an IEP meeting.

The *legal* issues raised by the petition were and still are unsettled. When a parent challenges a new proposed IEP, the preexisting IEP stays in place until the challenge is resolved, "unless the [school board] and the parents otherwise agree." 20 U.S.C. § 1415(j). Here, PLB challenged only part, not all, of the new proposed IEP; one might reasonably say PLB and the school board agreed to the unchallenged provisions. And in any event, nothing prevents a parent and school board from continuing their efforts to find a plan acceptable to both sides. One method by which a parent and school board can do this—one method by which they may "otherwise agree" to change the existing IEP even while a challenge is pending—is through a new IEP meeting. Or so a reasonable parent (and attorney) could assert.

The statute does not explicitly require a school board to convene a new IEP meeting in an effort to reach such an agreement while a challenge is pending, but neither does the statute *prohibit* a new IEP meeting. PLB's assertion that the School Board was obligated to convene such a meeting was not frivolous, unreasonable, or without foundation. And there is no reason to assert PLB made the claim for an improper purpose; she made the claim to force a new IEP meeting, with the goal of improving the School Board's treatment of A.L.

In asserting the contrary, the School Board relies on *CP v. Leon Cty. Sch. Bd.*, 483 F.3d 1151 (11th Cir. 2007). There, though, the school board conducted itself much differently than did the School Board here. There the school board continued to meet with CP's mother in an effort to resolve the dispute, and the school board changed the IEP in one respect (with CP's mother's agreement) while the challenge to the IEP was pending. Here, in contrast, the School Board first refused to meet with PLB at all, and then refused to allow her to record a meeting; nothing like that occurred in *CP*. Perhaps this would change the *CP* result; perhaps not. But it cannot be said that *CP* foreclosed PLB's challenge to the School Board's failure to meet. Even more clearly, *CP* did not resolve the issue of PLB's right to record any IEP meeting.

This result would be the same without regard to, but the result draws further support from, an additional circumstance. After the ALJ dismissed DOAH 2, the School Board initiated yet another administrative proceeding, referred to in this order as DOAH 4. The School Board sought a ruling that it could properly prohibit PLB from recording a new IEP meeting. This court (again through Judge Smoak) dismissed PLB's challenge to the ruling in DOAH 2 for failure to exhaust administrative remedies, reasoning that federal-court review was premature before the ALJ ruled in DOAH 4. That a federal court refused to address the issue of a parent's right to record an IEP meeting until an administrative ruling on the issue

confirms that PLB had a reasonable basis for raising the issue administratively: to avoid an exhaustion defense.  In light of the real possibility that the School Board would assert and a court would recognize an exhaustion defense, it is hard to characterize PLB's pursuit of an administrative proceeding as frivolous, unreasonable, or without foundation, or to question her motive for filing the proceeding.

### III

One further point deserves mention.  PLB served DOAH 2 the day after the six-week evidentiary hearing in DOAH 1 ended.  This could not have engendered a positive response from the School Board or the ALJ.  Both might have preferred to resolve the parties' entire dispute in a single proceeding.  But the events challenged in DOAH 2 occurred (at least in substantial part) after PLB filed the petition in DOAH 1.  PLB could have moved to amend her DOAH 1 petition to raise the new issues, and the ALJ might have granted the motion.  But under Florida law, PLB was not *obligated* to amend; she was free to file a new petition.  And under Florida law, the ALJ would not have been *required* to grant leave to amend.  *See, e.g.*, *Pilla v. Sch. Bd. of Dade Cty.*, 655 So. 2d 1312, 1314 (Fla. 3d Dist. App. 1995) (upholding a DOAH ALJ's denial of leave to amend and noting that in a DOAH proceeding, a "petitioner may amend its petition after the designation of the presiding officer only upon order of the presiding officer") (quoting *Beckum v. Fla.*

*Dep't of Health & Rehabilitative Servs.*, 443 So.2d 227, 228 n. 3 (Fla. 1st DCA 1983)).  That PLB chose to initiate a second proceeding rather than seeking leave to amend in the first is not a basis for awarding attorney's fees against her.

It is true, also, that Ms. Palmer's conduct of DOAH 2 and the other proceedings left much to be desired.  That the School Board has lost patience is understandable.  But PLB's pursuit of DOAH 2 as a whole was not frivolous, unreasonable, or without foundation.  Nor can it be said that she pursued the proceeding for any purpose other than to bring about what she believed would be better treatment of A.L.  The School Board is not entitled to recover the fees it incurred successfully defending DOAH 2.

IV

For these reasons,

IT IS ORDERED:

1.  The clerk must enter judgment stating, "This action was resolved on a motion for summary judgment.  It is ordered that the plaintiff Jackson County School Board recover nothing.  The claims against the defendants PLB and Rosemary Palmer are dismissed on the merits."

2.  The clerk must close the file.

SO ORDERED on September 29, 2015.

s/Robert L. Hinkle<br>United States District Judge

Case No.  5:12cv294-RH/EMT